**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 18, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff-Appellee, | No. 11-4110 |
| v. | (D. of Utah) |
| CRUZ DEJESUS ORTIZ, | (D.C. No. 09-CR-00080-DAK) |
| Defendant-Appellant. | |

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **TYMKOVICH**, and **GORSUCH**, Circuit Judges.[**]

---

Cruz Dejesus Ortiz pleaded guilty in the District of Utah to possession of 50 grams or more of methamphetamine with intent to distribute, an offense carrying a mandatory minimum sentence of 10 years' imprisonment. As part of his plea agreement, the government agreed to recommend the district court apply the statutory "safety valve," which would allow Ortiz to avoid the mandatory

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

minimum. *See* 18 U.S.C. § 3553(f). The presentence report (PSR), however, found Ortiz to be ineligible for safety-valve relief because he was an "organizer, leader, manager, or supervisor in any criminal activity" involving less than five participants. *See* United States Sentencing Guidelines (USSG) § 3B1.1. The court accepted the findings of the PSR and sentenced Ortiz to the mandatory minimum. Ortiz appeals his sentence, arguing the district court should have applied the safety valve.

Because we find the district court did not clearly err in finding Ortiz was a leader or supervisor in a drug conspiracy, we AFFIRM the court's judgment.

# I. Background

Most of the facts underlying Ortiz's conviction are not in dispute. Ortiz and his nephew, Manuel Higuera, were involved with methamphetamine distribution in the Ogden, Utah area. Both were arrested in connection with search warrants executed on two homes in the Ogden area where significant quantities of methamphetamine and cocaine were found.

After waiving his Miranda rights, Higuera gave a statement to the police describing the nature of his relationship with Ortiz. According to the uncontested police report:

> Cruz would call him on occasion and tell him to get the cocaine and package up whatever amount he tells him to. Manuel would then get the cocaine from the washer and dryer [where it was hidden] and package it and then someone would show up at the house and he

would sell drugs to them.  Manuel said the money would then go to Cruz.

Aplt. Br. at 5–6.  The government charged Ortiz with methamphetamine and cocaine possession with intent to distribute.

Ortiz and the government arrived at a plea bargain.  Ortiz agreed to plead guilty to possession of 50 grams or more of methamphetamine with intent to distribute.  The government agreed to drop the cocaine charges and to recommend safety-valve relief, contingent upon Ortiz cooperating with a government debriefing (which he did prior to sentencing).  The plea agreement contained the following caveats:

> I understand that the Court can make no decision as to what the sentence will be until the Presentence Report has been received and reviewed by the judge.  I further understand that the Court is not obligated in any way to follow the recommendation of the government concerning sentencing matters.  If the Court does not follow the government's recommendation, I know that I will not be allowed to withdraw my plea of guilty.
> . . .
> Based on information presently known to it, the government believes that the defendant may meet the criteria of [the safety valve]. . . . [I]f the government does not believe the defendant has fulfilled . . . any . . . [safety-valve] requirement by the time of sentencing, it shall be free to so advise the Court . . . .

R., Vol. 1 Supp., at 6–7.

The PSR found Ortiz qualified as "an organizer, leader, manager, or supervisor in any criminal activity" under USSG § 3B1.1(c).  The PSR based this finding on the police report's uncontested statement that Ortiz would "tell

[Higuera] to get the cocaine and package up whatever amount he tells him to." The PSR interpreted this statement as meaning Ortiz would "instruct" Higuera — i.e., give him orders — thus implying a supervisory role. Such a supervisory role would render Ortiz ineligible for safety-valve relief.

Ortiz objected to the PSR on the grounds that it mischaracterized his relationship with Higuera. Ortiz explained that although he and Higuera would sometimes fill drug orders for each other, there was no hierarchy between the two, and they would share the profits from each deal. Ortiz argued that Higuera's statement that Ortiz would "tell him" what to do was not intended to carry the meaning that Ortiz instructed or ordered Higuera, but rather that Ortiz merely *advised* Higuera in furtherance of their "equal partnership." R., Vol. 1, at 15. Thus, Ortiz urged the court to reject the PSR's role-related findings and instead apply the safety valve as the plea agreement called for.

At Ortiz's sentencing hearing, Ortiz reiterated his objections. The court asked for the government's view of the correct disposition. The government responded:

> It was contemplated when we put together the plea agreement that this defendant may qualify for safety valve. So we did put that in the plea agreement. However, when the pre-sentence report came out, it talked about how Mr. Cruz would call Manuel Higuera and ask him to get drugs, and that that was, in fact, supervising. And I couldn't disagree with that. So we filed a non-objection to the pre-sentence report based on that.

-4-

R., Vol. 2, at 10.  Ortiz, in response, pointed out that all the information in the PSR was known to the government at the time of the plea agreement.  *See* R., Vol. 2, at 13.  Ortiz also testified personally that his relationship to Higuera was not supervisory in nature, and that they would share the profits from their sales.  *See id.* at 14–15.

After hearing the arguments, the court found Ortiz ineligible for safety-valve relief.  The court reasoned: "[I]t doesn't take much under these guidelines to be a leader or organizer.[1]  You give a few directions, and there you have it.  So I think that on the record I have in front of me, that he probably does qualify for that."  *Id.* at 17.  The court then sentenced Ortiz to the mandatory minimum of 120 months' imprisonment.

## II.  Discussion

Ortiz claims the district court erred in denying him safety-valve relief.  He argues the district court's factual findings regarding his role were without support in the record, and he urges us to vacate his sentence and remand with instructions to apply the safety valve.

---

[1] While this comment did not literally encompass the "manager" or "supervisor" roles enumerated in the Guidelines, the PSR and the context of the sentencing hearing make clear that the court was referring to the § 3B1.1(c) enhancement generally.  As Ortiz acknowledges, "the district court relied on either the 'leader' role or the 'supervisor' role to enhance Appellant's sentence." Aplt. Br. at 14.

We pause to note that Ortiz does *not* argue his sentence should be vacated based on the government's apparent change in position between the time the plea agreement was executed and the time of sentencing. To the contrary, Ortiz explicitly states he "is not seeking remand on the government's breach or to withdraw his plea because it would be a futile exercise." Aplt. Br. at 4. Accordingly, we will not consider whether the government's actions below might justify a remand.

Whether the defendant acted as a supervisor for guidelines purposes is an issue of fact we review for clear error. *United States v. Snow*, 663 F.3d 1156, 1162 (10th Cir. 2011), *cert. denied*, 182 L. Ed. 2d 219 (2012). Under this standard, "[w]e will not disturb the court's factual findings unless they are without support in the record, or unless after reviewing all the evidence we are left with the definite and firm conviction that a mistake has been made." *United States v. Swanson*, 360 F.3d 1155, 1165–66 (10th Cir. 2004) (quoting *United States v. Burridge*, 191 F.3d 1297, 1301 (10th Cir. 1999)). A defendant need not be a drug kingpin to qualify as a supervisor for guidelines purposes; rather, he "'needs merely to give some form of direction or supervision to someone subordinate in the criminal activity for which the sentence is given.'" *United States v. Ivory*, 532 F.3d 1095, 1104–05 (10th Cir. 2008) (quoting *United States v. Backas*, 901 F.2d 1528, 1530 (10th Cir. 1990)).

Here, the evidence regarding whether Ortiz was a supervisor was conflicting. In support of that finding was Higuera's statement to the police, which indicated the following facts: (1) customers would place drug orders with Ortiz; (2) Ortiz would "tell" Higuera to package the drugs; (3) customers would pick up the orders from Higuera; and (4) the proceeds would "go to" Ortiz. One can fairly infer from these facts that Ortiz was the primary manager of the transactions, and Higuera played a subordinate role. This inference flows not only from the fact that Ortiz told Higuera what to do, but also from Ortiz's control of the terms of the deal and the proceeds. In addition, Higuera's statement indicated he knew about some, but not all, of Ortiz's drug stashes, suggesting Higuera's involvement was less extensive than Ortiz's.

Weighing against the finding of Ortiz's supervisory role is his testimony at sentencing that "[w]ith me, there was no organization, nor was there any manager of anyone. With regard to the drugs, if I didn't have any and Manuel did, then we would get them from one another. And as you know, one always shares profit, what we would get from it." R., Vol. 2, at 14–15. This testimony, if believed, would tend to suggest Ortiz and Higuera were roughly equal operators, and that Ortiz did not hold a supervisory role. Of course, this testimony was self-serving and subject to the court's credibility determination.

It is not our role, on clear-error review, to second-guess the district court's weighing of the evidence and assessments of credibility. It is enough for us to

say that the district court's finding had support in the record. Having no definite and firm conviction that the district court erred, we must therefore uphold its finding that Ortiz was an "organizer, leader, manager, or supervisor" under USSG § 3B1.1(c).

## III.  Conclusion

Because the district court did not clearly err in finding the safety valve inapplicable, we AFFIRM the court's judgment.[2]

ENTERED FOR THE COURT,

Timothy M. Tymkovich
Circuit Judge

---

[2] This court grants Appellee's Motion to Correct Appellee's Brief.